UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Craig McNeil, Richard Nelson, Cole Nelson, and American Train Dispatchers Division of BLE,

Plaintiffs,

Civil File No. 00-2649 (PAM/RLE)

v.

**MEMORANDUM AND ORDER**

Duluth, Missabe and Iron Range Railroad System,

Defendant.

---

This matter is before the Court on Defendant Duluth, Missabe and Iron Range Railroad System's Motion to Dismiss. For the reasons that follow, the Court denies in part and grants in part the Motion.

**BACKGROUND**

Plaintiffs Craig McNeil, Richard Nelson, and Cole Nelson were at all times relevant to this lawsuit dispatchers for Defendant Duluth, Missabe and Iron Range Railroad System ("DM&IR"). Plaintiffs Richard and Cole Nelson were also officers of Plaintiff American Train Dispatchers Division of BLE ("ATDD"), a labor union organized pursuant to the Railway Labor Act ("RLA"), 45 U.S.C. § 151 et seq. Plaintiff Craig McNeil, the only Plaintiff still employed as a dispatcher for DM&IR, is currently the General Chairman of the ATDD.

FILED MAY 29 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

On December 6, 2000, Plaintiffs commenced this lawsuit alleging that DM&IR violated 45 U.S.C. § 152, Third and Fourth, by engaging in a pattern of conduct calculated to result in Plaintiffs' actual or constructive discharge. Plaintiffs assert that DM&IR's improper conduct was motivated by anti-union animus, and that the DM&IR ultimately seeks to eliminate the ATDD as a certified union. Plaintiffs allege that they have been systematically and unfairly subjected to adverse employment action because while officers of the ATDD they refused to be manipulated or controlled by DM&IR management. Plaintiffs also claim that DM&IR's conduct constitutes intentional infliction of emotional distress under Minnesota law.

DM&IR contends that this suit should be dismissed because, pursuant to the RLA, Plaintiffs' claims may only be brought before the National Railway Adjustment Board ("NRAB"), and that as a consequence, this Court is without jurisdiction to hear those claims. In the alternative, DM&IR contends that the statute of limitations bars Richard and Cole Nelson's RLA claims, and that Plaintiffs' intentional infliction of emotional distress claims fails as a matter of law.

## DISCUSSION

### A. Standard

For the purposes of Defendant's Motion to Dismiss, the Court takes all facts alleged in Plaintiffs' Complaint as true. Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). Further, the Court must construe the allegations in the Complaint and reasonable inferences

arising from the Complaint favorably to Plaintiffs. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). A motion to dismiss will be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." Id.; see also Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

**B. Jurisdiction**

DM&IR's central argument is that this case must be dismissed because, pursuant to the RLA, Plaintiffs claims may only be brought before the NRAB. The RLA was designed to "promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 252 (1994). Accordingly, the RLA establishes a mandatory arbitral mechanism by which minor labor disputes–disputes in which the parties seek to enforce existing contractual rights–are resolved. 45 U.S.C. § 184; see also Deneen v. Northwest Airlines, Inc., 132 F.3d 431, 439 (8th Cir. 1998). Although the standard is straightforward, the determination of whether a dispute is in fact "minor" within the meaning of the RLA can be somewhat vexing. Often, as in this case, courts are faced with facts that could be construed as involving minor labor disputes, but that are framed as statutory violations or violations of common law. The Supreme Court addressed this perceived difficulty in Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246 (1994).

Norris involved a wrongful discharge claim brought by an employee of Hawaiian Airlines, Inc., who was fired after he refused to sign a maintenance record, as required by his

collective bargaining agreement ("CBA"). Id. The airline challenged the lawsuit on the ground that Norris' claims were preempted by the RLA. Id. The Supreme Court rejected the airline's challenge, explicitly holding that the RLA's mandatory arbitral system does not preclude federal or state law remedies where the resolution of such claims does not depend on an interpretation of the CBA. Id. at 262-63. This is true even where a plaintiff may have a parallel claim for wrongful discharge, or some other alleged violation of a CBA, that would appropriately be brought before the NRAB. Indeed, the Court explicitly noted that "the existence of a potential CBA-based remedy [does] not deprive an employee of independent remedies available under state law." Id. at 261. Therefore, in determining whether Plaintiffs' claims are in fact minor labor disputes, the Court must consider the nature of the federal and state law claims, and whether the disposition of those claims requires a consideration of the terms of the CBA. The Court will not dismiss Plaintiffs' claims simply because Plaintiffs also have a remedy under the RLA's mandatory arbitration mechanism.

DM&IR contends that Plaintiffs' claims must be classified as minor labor disputes because, as evinced by the Amended Complaint, the claims are tied directly to DM&IR's alleged violations of the CBA. The Court is not persuaded. Plaintiffs' Amended Complaint is indeed replete with factual allegations that the DM&IR violated the terms of their CBA. However, Plaintiffs' claims allege violations of the RLA[1] and for emotional distress, each

---

[1] It should be noted that preemption analysis does not apply to Plaintiffs' claim under § 152 of the RLA because the RLA cannot preempt itself. DM&IR's real challenge to the RLA claim is that Plaintiffs may not avail themselves of its protections. That issue is discussed more fully below.

of which focuses on DM&IR's alleged anti-union animus and the effect of that animus on Plaintiffs. Plaintiffs assert no legal theories dependent on an interpretation of their CBA. Therefore, although Plaintiffs' rights under their CBA are tangentially involved, Plaintiffs' claims arise independent of that CBA. That is, by bringing claims under the RLA and Minnesota common law, Plaintiffs seeks to enforce federal and state rights, not a contractual right contemplated by the CBA. See Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1115 (8th Cir. 1995). Moreover, Plaintiffs' claims focus on DM&IR's anti-union animus, or motivation in allegedly subjecting Plaintiffs to adverse employment actions. Such purely factual questions do not require the Court to interpret the terms of the CBA. See Norris, 512 U.S. at 262 (citing Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 407 (1988)). Thus, because the RLA and Minnesota common law are the sources of the claim, rather than the CBA, the RLA does not divest this Court of jurisdiction over those claims. See Norris, 512 U.S. at 256 (holding that the RLA does not preempt claims to enforce rights independent of the CBA); Taggart v. Trans World Airlines, Inc., 40 F.3d 269, 274-75 (8th Cir.1994) (recognizing that Norris narrowed the scope of RLA preemption and holding that a state law discrimination claim is not preempted by RLA). However, should it become apparent that interpretation of the CBA is necessary to the final determination of Plaintiffs' claims, the Court will, as required, dismiss the case.

The Court must now determine whether, apart from the "minor dispute" issue, Plaintiffs may avail themselves of the protections of § 152, Third and Fourth. See Fennessy

v. Southwest Airlines, 91 F.3d 1359, 1362 (9th 1996). As previously noted, DM&IR essentially challenges the applicability of those provisions by arguing that they are principally designed to address the precertification rights and freedoms of unorganized employees, not unionized employees such as Plaintiffs. DM&IR also argues that Plaintiffs' pleadings do not allege sufficient anti-union animus to state a violation of the RLA.

While the Court recognizes that the protections afforded to unionized employees may be narrower than the protections given to unorganized employees, see Bhd. of Locomotive Eng'rs v. Kansas City S. Ry. Co., 26 F.3d 787 (8th Cir. 1994), the Eighth Circuit has expressly read § 152, Third and Fourth, to include postcertification cases. See id. at 795; see also Tello v. Soo Line R.R. Co., 772 F.2d 458, 462 (8th Cir. 1985) (noting that plaintiff would have had a cognizable claim under § 152, Third, had he provided sufficient evidence that defendant interfered with the union members' choice of their collective bargaining representative). Thus, regardless of whether a union has been certified, the critical inquiry is whether sufficient anti-union animus has been established to support a claim under § 152.

After carefully reviewing the Amended Complaint and the parties' arguments, the Court concludes that Plaintiffs in this case have made sufficient pleadings of anti-union animus to defeat DM&IR's Motion to Dismiss. Specifically, Plaintiffs allege a pervasive pattern of adverse and hostile treatment directly motivated by DM&IR's anti-union animus. Most compelling, Plaintiffs allege that DM&IR began this illegal campaign immediately after Plaintiffs protested the unsanctioned appointment of a management-friendly union

officer. (Am. Compl. ¶¶ 5F-5G.) Plaintiffs successfully invalidated the appointment pursuant to union bylaws. (Id. ¶ 5H.) Thereafter, the individual Plaintiffs were each elected to ATDD's board, and the campaign of hostile treatment began. (Id.) Given these allegations, the Court cannot conclude that Plaintiffs have failed to state a claim under § 152, Third and Fourth, of the RLA.

**B. Statute of Limitations**

DM&IR also argues that Richard and Cole Nelson's RLA claims are barred by the applicable statute of limitations because the claims were brought more than 19 months after they were discharged from DM&IR. The parties agree that a six month statute of limitations applies in this case. See Rydzcski v. Burlington N., 708 F. Supp. 1057, 1061 (D. Minn. 1989) (applying the six month period of 29 U.S.C. § 160(b) to a breach of duty of fair representation claim brought pursuant to the RLA). The parties also agree that the applicable statute of limitations begins to run when, in the exercise of reasonable diligence, the plaintiff knows or should know of the claim. See id. at 1062. The parties disagree, however, as to when the statute of limitations began to run in this case. According to DM&IR, the statute began to run immediately upon Richard and Cole Nelson's respective dismissals from DM&IR. For their part, Plaintiffs argue that they were not immediately aware that DM&IR's actions were motivated by anti-union animus, and that it was not until DM&IR's pattern of adverse treatment became clear that they recognized their ability to raise a claim under the RLA. Plaintiffs argue that, at a minimum, they should be allowed to develop the record with

respect to this issue.

DM&IR's argument is far from lacking in merit. However, given the infancy of this lawsuit and that this issue will not unduly delay or complicate discovery, the Court declines to definitively rule on DM&IR's statute of limitations defense at this time. The Court will welcome additional argument with respect to this issue when the record is more fully developed. DM&IR's Motion to Dismiss on this basis is denied without prejudice.

### C. Intentional Infliction of Emotional Distress

Finally, DM&IR contends that Plaintiffs have failed to state a claim for intentional infliction of emotional distress. As previously noted, Plaintiffs' emotional distress claims are not preempted by the RLA. Therefore, the Court must determine whether Plaintiffs have properly pleaded an emotional distress claim under Minnesota law. In order to prevail on such a claim, a plaintiff must establish that: 1) the defendant's conduct was extreme and outrageous; 2) the conduct was intentional or reckless; and 3) it caused severe emotional distress. Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 438-39 (Minn. 1983). It should be noted that "[t]he operation of this tort is sharply limited to cases involving particularly egregious facts." Id. at 439. As such, emotional distress claims rarely survive summary judgment. Nevertheless, this case has not yet progressed to the summary judgment stage, and the Court is unable to conclude at this time that Plaintiffs have failed to raise a valid claim for emotional distress. The Court does, however, find that ATDD, as an organization, does not have standing to sue for emotional distress. The Court therefore

dismisses ATDD's intentional infliction of emotional distress claim.

**CONCLUSION**

For the foregoing reasons, and upon all of the files, records, and proceedings herein, the Court denies in part and grants in part DM&IR's Motion to Dismiss.

Accordingly, **IT IS HEREBY ORDERED** that:

1. DM&IR's Motion to Dismiss (Clerk Doc. No. 14) is **DENIED IN PART AND GRANTED IN PART**; and

2. Count II of Plaintiffs' Amended Complaint (Clerk Doc. No. 2) is **DISMISSED WITH PREJUDICE** as to Plaintiff ATDD.

Dated: May 28, 2001

Paul A. Magnuson
United States District Court Judge